BONNIE & COMPANY FASHIONS, INC.
and Bonnie Boerer, individually,
Plaintiffs,

v.

BANKERS TRUST COMPANY,
Defendant.

No. 91 Civ. 0341 (DNE).

United States District Court,
S.D. New York.

Jan. 21, 1997.

Budd Larner Gross Rosenbaum Greenberg & Sade, P.C., New York City (Paul A. Marber, of counsel), for plaintiffs.

Moses & Singer, L.L.P., New York City (Joel David Sharrow, of counsel), Kravet & Vogel, L.L.P., New York City (Joseph A. Vogel, of counsel), Bankers Trust Company, New York City (Jack H. Weiner, of counsel), for defendant.

## OPINION & ORDER

EDELSTEIN, District Judge:

Each party has moved for reargument of the motions decided by this Court in its November 20, 1996, Opinion and Order, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 945 F.Supp. 693 (S.D.N.Y.1996) (the "1996 Opinion"), pursuant to Rule 3(j) of the United States District Courts for the Southern and Eastern Districts of New York Joint Rules for Civil Proceedings ("Local Rule 3(j)"). Each party opposes the other party's motion for reargument. For the following reasons, both parties' motions to reargue are denied.

## BACKGROUND

This case arises from an alleged breach of a factoring agreement (the "Factoring Agreement") between plaintiff Bonnie Boerer ("Boerer"), plaintiff Bonnie & Company Fashions, Inc. ("Bonnie & Co.") ("plaintiffs") and defendant Bankers Trust Company ("defendant," "BTC" or "the Bank"). Plaintiffs' Complaint contains six counts, all of which arise from BTC's alleged violations of the Factoring Agreement. *See* (Complaint and Jury Demand, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341 ("Complaint") ¶¶ 8–66 (Jan. 2, 1991).) The facts underlying the instant litigation are set forth in detail in this Court's 1996 Opinion, *Bonnie & Co.*, 945 F.Supp. at 699–702, and a familiarity therewith is assumed.

In its 1996 Opinion, this Court granted in part and denied in part defendant's motion for summary judgment. This Court: (1) denied defendant's motion for summary judgment on Count One; (2) granted summary judgment to defendant on Counts Two and Three; and (3) granted in part and denied in part defendant's motion for summary judgment on Counts Four, Five and Six. *Bonnie & Co.*, 945 F.Supp. at 733–34. In addition, this Court granted in part and denied in part defendant's motion for summary judgment on its eleven affirmative defenses and seven counterclaims. *Id.*

This Court also denied all of the following in its 1996 Opinion: (1) plaintiffs' request for additional time to conduct discovery; (2)

plaintiffs' motion for leave to file additional affidavits in response to defendant's motion for summary judgment; and (3) plaintiffs' motion to take a second deposition of a non-party witness; and (4) plaintiffs' request for a jury trial. This Court also dismissed as moot defendant's motion for a protective order.

Plaintiffs' motion for reargument seeks to have this Court: (1) "reinstate that portion of Count [Five] ... which asserts a claim for *inter alia,* breach of the Factoring Agreement and breach of the implied covenant of good faith and fair dealing"; (2) grant plaintiffs' motion to redepose a non-party witness; and (3) "clarify" whether one of plaintiffs' Count One claims survived defendant's summary judgment motion in the 1996 Opinion. (Notice of Motion for Reargument, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 91 Civ. 0341 at 2 (Dec. 4, 1996).) Defendant opposes each ground advanced by plaintiffs' motion for reargument. (Defendant's Memorandum of Law in Opposition to Plaintiffs' Motion for Reargument, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 91 Civ. 0341 ("BTC Opp. Memo") at 1 (Dec. 13, 1996).)

In its motion for reargument, defendant seeks to have this Court grant summary judgment on Plaintiffs' Count Five "in its entirety." (Defendant's Memorandum of Law in Support of its Motion for Reargument, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 91 Civ. 0341 ("BTC Memo") at 1 (Dec. 2, 1996).) Plaintiffs oppose defendant's motion to reargue. (Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion for Reargument, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.,* 91 Civ. 0341 ("Pltfs.' Opp. Memo") at 1 (Dec. 13, 1996).)

### DISCUSSION

This Court will consider the parties' respective motions to reargue in turn. As a preliminary matter, however, this Court will set forth the legal standard governing motions to reargue.

### I. The Legal Standard Governing Motions for Reargument

In order to succeed on a motion to reargue under Local Rule 3(j), the moving party must demonstrate that the court overlooked the controlling decisions or factual matters that were placed before the court in the underlying motion. *Walsh v. McGee,* 918 F.Supp. 107, 110 (S.D.N.Y.1996) (Edelstein, J.); *United States v. International Business Machs. Corp.,* 79 F.R.D. 412, 414 (S.D.N.Y. 1978) (Edelstein, C.J.); *In re Houbigant, Inc.,* 914 F.Supp. 997, 1001 (S.D.N.Y.1996); *Ameritrust Co. Nat'l Ass'n v. Dew,* 151 F.R.D. 237, 238 (S.D.N.Y.1993); *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993), *aff'd,* 35 F.3d 49 (2d Cir.1994); *East Coast Novelty Co. v. City of New York,* 141 F.R.D. 245, 245 (S.D.N.Y.1992).

Accordingly, "[a] party should not treat a motion to reargue as a substitute for appealing from a final judgment." *Morser v. AT & T Info. Sys.,* 715 F.Supp. 516, 517 (S.D.N.Y.1989); *see also Bensen v. American Ultramar Ltd.,* No. 92 Civ. 4420, 1996 WL 490702, at *4 (S.D.N.Y. Aug. 28, 1996) ("[t]his Court will not tolerate motions to reargue as substitutes for appeal"); *Great American Ins. Co. v. J. Aron & Co.,* No. 94 Civ. 4420, 1996 WL 14455, at *2 (S.D.N.Y. Jan. 16, 1996) ("the court must not allow a party to use a motion to reargue as a substitute for appealing from a final judgment"). "A [Local] Rule 3(j) motion is not a motion to argue those issues already considered when a party does not like the way the original motion was resolved." *Houbigant,* 914 F.Supp. at 1001. Therefore, a Local Rule 3(j) motion "may not advance new facts, issues, or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* No. 86 Civ. 6447, 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989).

In addition to being an inappropriate vehicle for advancing new arguments or factual matters, Local Rule 3(j) "is narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been fully considered by the court." *Ameritrust,* 151 F.R.D. at 238; *see Houbigant,* 914 F.Supp. at 1001; *Caleb & Co. v. E.I. DuPont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). As a result, a party bringing a Local Rule 3(j) motion may properly point out only controlling factual or legal

matters which it had previously raised in the underlying motion, but which were not considered by the court. *Walsh*, 918 F.Supp. at 110.

## II. Plaintiffs' Motion for Reargument

Plaintiffs seek reargument on "three discrete issues [which] this Court resolved" in its 1996 Opinion. (Plaintiffs' Memorandum of Law in Support of Their Motion For Reargument, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341 ("Pltfs.' Memo") at 1 (Dec. 4, 1996).) First, plaintiffs' ask this Court to reconsider this Court's "dismissal of that portion of Count Five labeled as 'Claim Four,'" in which plaintiffs alleged that BTC breached an oral agreement to modify BTC's power to terminate the Factoring Agreement. *Id.* Second, plaintiffs' seek to reargue this Court's denial of plaintiffs' motion to take the second deposition of a non-party witness. *Id.* at 2. Third, plaintiffs "seek clarification that th[is] Court's denial of summary judgment on Count One of the Complaint encompasses the 'drop discount' claim plaintiffs asserted therein." *Id.* As noted above, BTC opposes plaintiffs' motion for reargument on each of these issues. (BTC's Opp. Memo at 1.) This Court will consider each parties' arguments regarding these three issues individually.

### A. The Alleged Oral Modification of the Factoring Agreement

The first issue which plaintiffs seek to reargue is based on the alleged oral agreement between plaintiffs and BTC which modified BTC's ability to unilaterally terminate the Factoring Agreement. (Pltfs.' Memo at 8.) This Court briefly will recount the facts underlying this alleged oral agreement.

In May 1989, John F. Contrucci ("Contrucci"), a BTC Vice President, became concerned that BTC had a "total exposure" on its Bonnie & Co. account which exceeded by approximately $1,200,000 its projected exposure on that account. *Bonnie & Co.*, 945 F.Supp. at 701. Plaintiffs contend that, after consulting with plaintiffs' accountants, BTC was satisfied that Bonnie & Co.'s 1989 finances were in order, but that BTC perceived a need for an infusion of working capital into Bonnie & Co. *Id.* Negotiations between plaintiffs and BTC followed and plaintiffs assert that an agreement was reached on May 25, 1989 (the "May 1989 agreement"). *Id.* Pursuant to the May 1989 agreement, Boerer personally was to pledge a $1,000,000 Treasury Bill as "liquid side collateral" to BTC and BTC was to reduce Boerer's then-unlimited guaranty to $2,000,-000. *Id.* Plaintiffs maintain, and BTC disputes, that also in consideration for Boerer's $1,000,000 pledge BTC agreed not to exercise its right to terminate the Factoring Agreement. *Id.* at 702. Nevertheless, when negotiations with plaintiffs regarding the Treasury Bill's expiration date "reached an impasse," on August 2, 1989, BTC "exercised its absolute right to terminate the Factoring Agreement." *Id.* (citations omitted). Plaintiffs maintain that BTC's actions constitute fraud and a breach of the May 1989 agreement. *Id.*

In Count Five of their Complaint, plaintiffs seek damages as a result of BTC's termination of the Factoring Agreement. *Id.* at 715; (Complaint ¶¶ 48–63.) As this Court observed in its 1996 Opinion, however, plaintiffs' Complaint is so poorly drafted that it is difficult to decipher precisely which claims plaintiffs attempt to plead. *Bonnie & Co.*, 945 F.Supp. at 715. As a result, this Court construed the Complaint in the light most favorable to plaintiffs and found that Count Five contained seven separate causes of action. *Id.* In the instant motion, plaintiffs seek to reargue this Court's grant of summary judgment to BTC on the fourth claim within Count Five—plaintiffs' claim for fraud due to BTC's termination of the Factoring Agreement despite their alleged May 1989 agreement to the contrary (the "fraud claim" or "Claim Four").

In Claim Four, plaintiffs allege that BTC "knew or would have known that the information [and] representations given to the plaintiff[s] were material and that they were false and misleading. Defendant intended that the plaintiff[s] would act upon false and misleading information and misrepresentation[s]." *Id.* at 718; (Complaint at ¶ 62.) As noted in the 1996 Opinion, plaintiffs inexplicably failed to state in their Complaint pre-

cisely what comprised the "information" and "misrepresentations" at the heart of their fraud claim. *Bonnie & Co.*, 945 F.Supp. at 718. Although the Complaint lacks any substantive support for plaintiffs' fraud claim, plaintiffs did supply an affidavit which states that

> BT[C]'s termination of the Factoring Agreement is imbued with bad faith. BT[C] may have had the power to terminate its relationship with Bonnie & Co. under the terms of the Factoring Agreement. What BT[C] did not have was any right to obtain a pledge of the [$1,000,000] liquid-side collateral it had requested in order to continue its support of the programs of Bonnie & Company, to thereafter disavow the fair and reasonable agreement made by its authorized officers for purposes of accommodating the interest of all parties and then to terminate the ongoing financial support it had promised to Bonnie & Company in consideration of the collateral pledge. In doing so, BT[C] violated the rights of Bonnie & Company and duties it owed Bonnie & Company.

*Id.* at 719; (Affidavit of Bonnie Boerer in Opposition of Defendant's Motion for Summary Judgment, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341, ¶ 38 (June 13, 1994).)

▌ In the 1996 Opinion, this Court granted summary judgment to BTC on plaintiffs' fraud claim. In New York, the elements of common law fraud are: (1) the defendant made a material false statement or omission; (2) the defendant intended to defraud the plaintiff thereby; (3) the plaintiff reasonably relied upon the representation; and (4) the plaintiff suffered damage as a result of his reliance. *Bonnie & Co.*, 945 F.Supp. at 720 (citing New York law).

In granting summary judgment to BTC on plaintiffs' fraud claim, this Court determined that BTC had established that plaintiffs could demonstrate no reasonable reliance upon BTC's alleged statements that BTC would not terminate the Factoring Agreement. *Id.* BTC showed that the Factoring Agreement explicitly provides that either party could terminate it upon sixty days notice, and that the agreement could be modi-fied only by a writing signed by both parties. *Id.* Because plaintiffs did not allege that they were wrongly induced to enter the Factoring Agreement, they are conclusively presumed knowingly to have agreed to its terms. *Id.* Moreover, plaintiffs failed to produce a writing signed by both parties, or even one signed by BTC alone, which modified BTC's ability to terminate the Factoring Agreement. *Id.* Because plaintiffs knew that the Factoring Agreement could not be modified except by a writing signed by both parties and presented no evidence to support the reasonableness of their relying upon an oral modification of the agreement, this Court found that plaintiffs did carry their burden of establishing that such reliance was reasonable. Because plaintiffs failed to carry their burden on summary judgment to raise a genuine issue of fact regarding their reasonable reliance on BTC's representations, this Court granted summary judgment to BTC.

In their motion to reargue, plaintiffs contend that this Court incorrectly awarded summary judgment to BTC on Claim Four. (Pltfs.' Memo at 8.) In support of their position, plaintiffs advance two arguments. First, in addition to the seven claims which this Court extracted from the tortured language of Count Five, plaintiffs claim that they pleaded an *eighth* claim in Count Five. *Id.* Plaintiffs maintain that they "also asserted that the Bank's termination of the Factoring Agreement two months after the [May 1989] agreement ... 'was a breach of good faith and fair dealing.'" *Id.* (quoting Plaintiff's [sic] Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment and Other Relief, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341 ("Pltfs.' SJ Opp. Memo") at 14–22 (June 13, 1994)). Plaintiffs assert that "[s]uch a claim is fairly encompassed within Count [Five]." *Id.* (citing Complaint at ¶¶ 59–62). Plaintiffs' contend that "although the "Factoring Agreement gave either party the right to terminate on [sixty] days' notice, that right of termination could not be exercised in bad faith." *Id.* at 12. In the case at bar, plaintiffs contend that "[s]everal factors tend to prove [BTC's] bad faith": (1) Bonnie & Co. was not in default when BTC terminated the

Factoring Agreement; (2) BTC terminated the Factoring Agreement "a mere two months after extracting [$1,000,000]" from Boerer; and (3) BTC timed its termination just prior to Bonnie & Co.'s most profitable seasons so that Bonnie & Co.'s "entire business was placed in jeopardy." *Id.* at 13–14.

Second, plaintiffs "respectfully assert that the [May 1989] oral modification agreement was enforceable under New York law, and was breached by [BTC] when it terminated the Factoring Agreement." *Id.* at 8. Plaintiffs contend that, although the general rule in New York is that "a contract containing a proscription against oral modifications 'cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement is sought' ... two exceptions exist ... which basically constitute 'waivers' of the no-oral modification clause." *Id.* at 8–9 (quotation omitted) (emphasis omitted). Plaintiffs contend that the first such exception is that "the requirement of a writing is avoided if there is "partial performance" of the oral modification which is "unequivocally referable" to the oral modification. *Id.* According to plaintiffs, the second exception to the proscription against oral modifications is the doctrine of equitable estoppel. *Id.* at 11. Pursuant to that doctrine, once a party to a written agreement has induced another's significant reliance upon an oral modification, the first party may be estopped from invoking [the no oral modification clause] to bar proof of that oral modification. *Id.*

Plaintiffs contend that both of these exceptions are applicable to the instant case. Plaintiffs maintain that the "part performance" exception is satisfied because "there is abundant evidence that the parties reached an oral agreement on May 25, 1989[,] that [BTC] would continue to ... support [Bonnie & Co.] ... in exchange for Boerer['s] personally pledging [$1,000,000] in side collateral." *Id.* at 9. Plaintiffs assert that they performed their end of the alleged oral modification "when Boerer posted the Treasury Bill and executed the [Security Agreement pledging the side-collateral] on June 29, 1989." *Id.* at 9–10. Plaintiffs further contend that this performance was "unequivocally refera-

ble" to the alleged oral modification "since the Factoring Agreement did not require Boerer to pledge [$1,000,000] of her own funds." *Id.* at 10. Plaintiffs maintain that the second exception, equitable estoppel, applies to the instant case because "Boerer's pledge of [$1,000,000] of her own personal funds—when she was not bound by the written Factoring Agreement to do so—constituted 'significant and substantial reliance' upon the May 25, 1989 oral modification." *Id.* at 12.

BTC opposes each of plaintiffs' arguments regarding this Court's grant of summary judgment on plaintiffs' fraud claim. BTC contends that plaintiffs' breach of the duty of good faith argument is meritless. (BTC Opp. Memo at 19.) BTC contends that, because the Factoring agreement expressly permitted BTC to unilaterally terminate the agreement, "BTC could not have breached any duty of good faith because it simply did what the Factoring Agreement entitled it to do." *Id.* at 19–20. Instead, BTC argues that it acted in good faith in terminating the agreement "only after it was faced with Boerer's inadequate counter-proposals [regarding the Treasury Bill's expiration date] and was justifiably concerned about Bonnie & Co.'s precipitous financial difficulties." *Id.* at 20. On the contrary, BTC points out, "it is undisputed that BTC continued to finance Bonnie & Co." during August and September 1989, the sixty day period following BTC's issuance of its notice of termination. *Id.*

BTC also attacks plaintiffs' claim that Boerer's pledge was "unequivocally referable" to the May 1989 agreement on two grounds. First, BTC points out that plaintiffs did not raise that argument in its opposition to BTC's motion for summary judgment and, consequently, it cannot now be raised in its motion for reargument. (BTC Opp. Memo at 6–7.)

Second, BTC asserts that plaintiffs' "unequivocally referable" argument is contradicted by Boerer's own testimony which states that "the issue of termination was *not* discussed during [the May 25, 1989,] meeting." *Id.* at 7 (emphasis in original). Furthermore, BTC contends that plaintiffs would lose even if the merits of this argument were

considered. *Id.* at 11. BTC maintains that, in order to avoid the no oral modification clause in the Factoring Agreement, the conduct upon which relief is predicated must be unequivocally referable only to the oral agreement. *Id.* at 11–12. BTC argues that under New York law, "[i]f the act is referable to *anything* else or is otherwise compatible with one or more of the documents unmodified, the part performance exception is inapplicable as a matter of law." *Id.* at 12 (citations omitted) (emphasis in original). In the case at bar, BTC asserts that "Boerer's pledge of her T-bill as collateral was 'wholly compatible' with her obligation under her Unlimited Guaranty (and subsequent Limited Guaranty) to provide original or additional collateral to BTC when asked for it." *Id.* at 13–14. As a result, BTC claims that Boerer's collateral pledge is not "unequivocally referable" to the May 1989 agreement. *Id.* at 14. Instead, BTC argues that Boerer's pledge was "reasonably explained by other expectations," specifically, "BTC's reduction of personal liability, not to an oral agreement to forbear from terminating the Factoring Agreement—a topic which Boerer testified had *not* been discussed during the May 25th meeting." *Id.* (emphasis in original).

BTC also opposes plaintiffs' equitable estoppel argument on three grounds. *Id.* at 16. First BTC asserts that, because "the rule for equitable estoppel also requires that the conduct relied upon to avoid [the no oral modifications clause] must not otherwise be compatible with the provisions of the written agreements," equitable estoppel is inapplicable to the case at bar because "BTC was entitled to ask for an receive collateral from Boerer under each of her Unlimited and Limited Guaranties." *Id.* Second, BTC contends that equitable estoppel "also requires detrimental reliance by the persons seeking to avoid the no oral modification clause," and that "Boerer could not have relied upon any conduct by BTC." *Id.* BTC argues that, because Boerer made her collateral pledge after May 25, 1989, and subsequent to BTC's rejection of her proposed expiration date for the Treasury Bill, "plaintiffs were fully aware that BTC did not accept their 'oral modification' and therefore could not have relied upon it." *id.* at 16–17. Third, BTC argues that

"plaintiffs' equitable estoppel argument is deficient because they have not and cannot show any 'unconscionable injury' caused by justified reliance upon the alleged promise of another." *Id.* at 17.

In response to BTC's opposition, plaintiffs reply that BTC's arguments do not prove, as a matter of law, that BTC is entitled to summary judgment on plaintiffs' fraud claim. (Plaintiffs' Reply Memorandum of Law in Support of Their Motion For Reargument, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341 ("Pltfs.' Reply Memo") at 2 (Dec. 17, 1996).) First, plaintiffs assert that there is a genuine issue of material fact concerning whether the parties entered into an oral modification of the Factoring Agreement, pursuant to which Boerer pledged $1,000,000 in exchange for BTC's reducing her personal unlimited guaranty to $2,000,000 and forbearing from terminating the Factoring Agreement. *Id.* at 3–5. Second, plaintiffs assert that, contrary to BTC's claims, plaintiffs raised their "unequivocally referable" argument in their brief opposing summary judgment, *id.* at 5 (citing (Pltfs.' SJ Opp. Memo at 26 n. 3)), and that there are several genuine issues of material fact regarding whether plaintiffs' performance was "unequivocally referable" to the oral modification. *Id.* at 5–11. Finally, plaintiffs argue that there is a genuine issue of material fact concerning BTC's alleged breach of "the implied covenant of good faith and fair dealing." *Id.* at 11.

To reiterate, the purpose of a motion to reargue pursuant to Local Rule 3(j) is not to offer the party which, having missed its mark in its first attempt to persuade a court, a second opportunity to do so using new ammunition. *See Houbigant*, 914 F.Supp. at 1001. Instead, a Local Rule 3(j) motion will succeed only if it establishes that the court overlooked controlling facts or precedent which were before it on the original motion. *Fulani*, 149 F.R.D. at 503. Accordingly, a motion for reargument "may not advance new facts, issues, or arguments not previously presented to the court." *Litton Indus.*, 1989 WL 162315, at *3.

In its motion for summary judgment, BTC presented several arguments to establish the absence of an issue of disputed material fact with respect to plaintiffs' fraud claim in Count Five. (Defendant's Memorandum of Law in Support of Its Motion For Summary Judgment, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341 ("BTC SJ Memo") at 25–28 (April 8, 1994)); *Bonnie & Co.*, 945 F.Supp. at 719. As this Court noted in its 1996 Opinion, however, *"[p]laintiffs did not respond to any of defendant's arguments rebutting plaintiffs' fraud claim." Bonnie & Co.*, 945 F.Supp. at 720 (emphasis added). Plaintiffs do not contest the accuracy of this statement in their motion for reargument. Because plaintiffs failed to challenge BTC's arguments that summary judgment is appropriate on plaintiffs' fraud claim when BTC made its original motion, this Court cannot entertain those arguments now.

Plaintiffs' presently claim that they did, in fact, raise their "unequivocally referable" argument in their opposition to summary judgment is unpersuasive. (Pltfs.' Reply Memo at 5–6.) While it is true that plaintiffs' "unequivocally referable" argument appears in a footnote in plaintiffs' summary judgment opposition papers, plaintiffs offered that argument in anticipation of a Statute of Frauds defense against the alleged oral modification of the parties' letter of credit agreement. (Pltfs.'s SJ Opp. Memo at 26 n. 5.) However, BTC never raised a Statute of Frauds defense and, in any event, the instant fraud claim arises from BTC's termination of the Factoring Agreement, not the letter of credit agreement. As a result, plaintiffs' "unequivocally referable" argument is apropos of nothing—it is relevant neither to an argument raised by BTC nor to the termination of the Factoring Agreement. Simply because an argument appears in plaintiffs' papers on the underlying motion regarding an issue unrelated to the issue which plaintiffs seek to reargue does not mean that the argument is to be deemed "raised" in the underlying motion for purposes of the issue which plaintiffs seek to reargue. As a result, this Court finds that plaintiffs' arguments were not raised in their opposition to summary judgment, and that, accordingly, plaintiffs' motion to reargue should be denied.

Furthermore, this Court questions plaintiffs' assertion that Count Five contains an *eighth* cause of action in addition to the seven claims which this Court considered in its 1996 Opinion. In their motion to reargue, plaintiffs contend that Count Five also contains a claim against BTC for breach of "the duty of good faith and fair dealing" due to BTC's termination of the Factoring Agreement after Boerer pledged the $1,000,000 side collateral. (BTC Memo at 8.) In support of their position that this claim was pleaded but not considered by this Court in its 1996 Opinion, plaintiffs point this Court to their memorandum opposing BTC's motion for summary judgment. *Id.* (citing Pltfs.' SJ Opp. Memo at 14–22). Plaintiffs also claim that "[s]uch a claim is fairly encompassed within Count [Five]." *Id.* (citing Complaint ¶¶ 59–62.)

The portion of the Complaint cited by plaintiffs in support of their "breach of good faith and fair dealing claim" reads as follows:

59. The need for additional security in the form of a Treasury Bill personally owned by Bonnie Boerer and pledged to the Bank in the Spring of 1989, was due entirely to the failure of the accountants chosen by the defendant, Bankers Trust Company, in improperly overpaying taxes and causing other severe financial drains on the reserves to the corporate accounts.

60. Defendant Bank violated its fiduciary duty to the plaintiff, all to the plaintiffs' general damage.

61. Defendant, Bankers Trust Company, failed to use reasonable care to disclose to the plaintiff that it could or would decide unilaterally, at its sole discretion and option, to withdraw completely the factoring and credit line extended to the plaintiff corporation.

62. Defendant, Bankers Trust Company, knew or should have known that the information, representations [sic] given to the plaintiff were false and misleading. Defendant intended that the plaintiff would act upon false and misleading information and representation.

(Complaint ¶¶ 59–62.) This Court thoroughly has examined paragraphs fifty-nine through sixty-two of plaintiffs' Complaint and can locate no language which can be construed as "fairly encompassing" a "breach of good faith and fair dealing" claim.

 In addition, although plaintiffs' memorandum in opposition to summary judgment contains an eight-page section arguing in support of their breach of good faith and fair dealing claim, it is inappropriate to raise new claims for the first time in submissions in opposition to summary judgment. As a result, this Court finds that, despite the remarkable number of claims tossed into Count Five of plaintiffs' Complaint, this Court was correct in determining that Count Five contained seven claims, and that Count Five cannot be read to include an eighth claim for breach of good faith and fair dealing, as plaintiffs contend. Moreover, while plaintiffs' current counsel cannot be faulted for the poor drafting of plaintiffs' pleadings because they were substituted as counsel after BTC's summary judgement motion was filed, this Court notes its disappointment with plaintiffs' new counsel for their misrepresentation to this Court that Count Five contains a claim which it plainly does not. This Court reminds plaintiffs' counsel that an attorney's intentional misrepresentation to a court is sanctionable conduct, *see* Fed.R.Civ.P. 11(c); *Veliz v. Crown Lift Trucks*, 714 F.Supp. 49, 58 (E.D.N.Y.1989); *Mars v. Anderman*, 136 F.R.D. 351, 353–54 (E.D.N.Y.1989), and that a recurrence of such conduct will not be disregarded lightly.

## B. Redeposing a Non–Party Witness

The second issue which plaintiffs seek to reargue is this Court's denial of plaintiffs' motion to take the second deposition of Nikki Cifarelli ("Cifarelli"), a non-party witness. (Pltfs.' Memo at 16.) Cifarelli is a former Vice President of Bonnie & Co. who was responsible for procuring letters of credit from BTC. *Bonnie & Co.*, 945 F.Supp. at 732. Cifarelli previously has given four hours of deposition testimony in this case. *Id.* In their original motion, plaintiffs sought to re-depose Cifarelli "[d]ue to the subsequent revelation of documents which would more than likely refresh her recollection." (Memorandum in Support of Plaintiffs' Motion For Leave to Take the Deposition of Nikki Cifarelli, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341, at 2.)

In the 1996 Opinion, this Court denied plaintiffs' motion to re-depose Cifarelli because plaintiffs breached Federal Rule of Civil Procedure ("Rule") 30(a)(2)(B) by seeking leave of this Court for Cifarelli's second deposition after plaintiffs already had served her with a subpoena. *Bonnie & Co.*, 945 F.Supp. at 732–33. This Court noted that at least one other court has permitted a second deposition despite a party's breach of Rule 30(a)(2)(B). *See Christy v. Pennsylvania Turnpike Comm'n*, 160 F.R.D. 51, 52–53 (E.D.Pa.1995). Unlike the case at bar however, *Christy* involved the redeposition of the plaintiff himself, and was confined only to new issues that the plaintiff had made relevant by amending his complaint after his first deposition had concluded. *Bonnie & Co.*, 945 F.Supp. at 732–33. This Court thus found a redeposition to be inappropriate because of plaintiffs' violation of Rule 30(a)(2)(B), and because Cifarelli is a non-party witness who plaintiffs' sought to redepose merely to refresh her recollection of issues covered at her first deposition. *Id.* at 733.

In their motion to reargue this issue, plaintiffs "do not quarrel with" this Court's 1996 Opinion which denied their motion for a second deposition based upon plaintiffs' desire to "rehash" Cifarelli's "old testimony." (Pltfs.' Memo at 16.) Instead, plaintiffs maintain that, in their original motion, they "sought to re-depose Cifarelli regarding other documents that plaintiffs' former counsel received only after Cifarelli's first deposition." *Id.* (citing Affidavit of Leonard A. Peduto, Jr., Pursuant to Local Rule 3(f) and in Support of Plaintiffs' Motion for Leave to Depose Nikki Cifarelli, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341 ("Peduto Redeposition Aff.") ¶ 10 (Oct. 14, 1994)). Plaintiffs "now ask that they be permitted to redepose Cifarelli for the narrow purpose of discussing and authenticating certain correspondence between her and the

Hong Kong manufacturers ... for plaintiffs' potential use at trial." *Id.*

This Court again notes that a motion to reargue will succeed only if it establishes that the court overlooked controlling facts or precedent which were before it on the original motion. *Fulani*, 149 F.R.D. at 503. Accordingly, a motion for reargument "may not advance new facts, issues, or arguments not previously presented to the court." *Litton Indus.*, 1989 WL 162315, at *3.

█ In the instant case, plaintiffs seek Cifarelli's redeposition for the "narrow purpose" of authenticating documents for possible use at trial. This Court finds, however, that this argument was not submitted to this Court in support of plaintiffs' original motion to redepose Cifarelli. Plaintiffs cite paragraph ten of the affidavit of Leonard A. Peduto, Jr. ("Peduto"), plaintiffs' former counsel, as the document which raised this argument to this Court when it considered plaintiffs' previous motion. (Pltfs.' Memo at 16.) That paragraph reads:

> 10. The testimony sought from Ms. Cifarelli in connection with the recently obtained business records and documents will be neither cumulative nor duplicative. Due to the prior unavailability of these records, Ms. Cifarelli was unable to give specific answers to my inquiries at the prior deposition. In effect, plaintiffs seek nothing more than to continue the cross-examination of Ms. Cifarelli based on records and documents not in counsel's possession and not known to counsel at the time of the deposition. No new line of questioning is contemplated.

(Peduto Redeposition Aff. ¶ 10.)

As a preliminary observation, this Court notes the apparent internal inconsistency in this excerpt. It is unclear how counsel can at once seek redeposition testimony that is "neither cumulative nor duplicative" yet contemplate "[n]o new line of questioning." Nevertheless, this Court need not dwell upon plaintiffs' claimed ability to avoid duplicating prior testimony while asking nothing new in order to find their reargument motion meritless. Instead, this Court need only observe once again that the source quoted by plaintiffs simply does not bear the meaning plain-

tiffs would have this Court read into it. Plaintiffs now claim that they merely want to redepose Cifarelli in order to authenticate documents, (Pltfs.' Memo at 16), while Peduto's affidavit states that he wants to "continue the cross examination of Cifarelli based on records and documents not in counsel's possession at the time of the deposition," (Peduto Redeposition Aff. ¶ 10). While plaintiffs' present argument might not be inconsistent with the argument proffered in Peduto's affidavit, the two arguments clearly are not the same. This Court's reading of plaintiffs' submissions is consistent with the strictness with which this Court must apply Local Rule 3(j). *See Ameritrust*, 151 F.R.D. at 238. As a result, this Court finds that plaintiffs improperly have advanced a new argument for redeposing Cifarelli in their motion to reargue. Accordingly, this Court finds that plaintiffs' motion to reargue regarding a second deposition of Cifarelli should be denied.

### C. This Court's Count One Ruling

The third objective of plaintiffs' motion to reargue is to "seek clarification of one aspect of Count One that may have been overlooked in the ... 1996 opinion." (Pltfs.' Memo at 17.) Specifically, plaintiffs are "unclear whether this Court addressed plaintiffs' 'drop discount' claim." *Id.* Accordingly, "although [plaintiffs] believe the Court intended to deny summary judgment on all of Count One—including with respect to [sic] the trade discount claim—[plaintiffs] respectfully seek clarification that the trade discount claim is included in the denial of summary judgment." *Id.* BTC does not oppose plaintiffs' request for clarification, but asserts that "[s]uch [a] request· is irrelevant, since as a matter of law, the benefits and profits" from plaintiffs' drop discount claim belong to BTC, not plaintiffs." (BTC Opp. Memo at 22.) In reply, plaintiffs argue that "the terms of the Factoring Agreement make clear that [BTC] was not entitled to the [drop] discounts." (Pltfs.' Reply Memo at 13.)

This Court finds that the rulings contained in its 1996 Opinion are unambiguous. Based upon this Court's observation of counsel's performance in this case, however,· this Court

does not leave unquestioned counsel's ability to grasp even the clearest of legal concepts. Accordingly, this Court will, as plaintiffs' request, clarify its Count One findings for the benefit of both parties.

■ In Count One, plaintiffs allege that BTC breached the Factoring Agreement in numerous ways. *See* (Complaint ¶¶ 13–23.) To refresh counsels' memories, it is basic, black-letter law that the existence of even *one* disputed issue of material fact renders a grant of summary judgment inappropriate. Fed.R.Civ.P. 56(c); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970). In its 1996 Opinion, this Court determined that summary judgment was inappropriate on Count One because of the existence of a material issue of disputed fact regarding whether BTC breached the Factoring Agreement by improperly charging back to Bonnie & Co. unpaid accounts for reasons not authorized by the agreement. *Bonnie & Co.*, 945 F.Supp. at 711. Once this Court found that there existed one material issue of disputed fact regarding Count One, this Court did not need to consider any of BTC's other alleged violations of the Factoring Agreement on order to deny summary judgment, and therefore, did not consider them. *Id.* As a result, *all* of BTC's conduct which was alleged by plaintiffs in Count One to violate the Factoring Agreement survived BTC's summary judgment motion.

It must be noted, however, that while all of the Factoring Agreement violations alleged in Count One survived summary judgment, plaintiffs' claim in Count One for punitive damages arising out of BTC's alleged Factoring Agreement breaches did not. *Id.* at 711–12. As a result, plaintiffs' are incorrect in their characterization that this Court denied summary judgment "on all of Count One." (Pltfs.' Memo at 17.)

## III. Defendant's Motion for Reargument

BTC brings a motion for reargument of so much of the Court's [1996 Opinion] as denied [BTC's] motion for summary judgment dismissing plaintiffs' Count Five in its entirety. (BTC Memo at 1.) In its 1996 Opinion, this Court determined that Count Five included seven separate claims, six of which alleged wrongful conduct by BTC, and one of which alleged three types of damages. *Bonnie & Co.*, 945 F.Supp. at 715–24. BTC seeks to reargue that portion of Count Five which this Court labeled "Claim One." This Court determined that in Claim One plaintiffs asserted that BTC breached the Factoring Agreement by faxing its notice of termination to Bonnie & Co.'s Hong Kong office. *Id.* at 716. In the 1996 Opinion, this Court denied summary judgment to BTC on Claim One because it found that the Factoring Agreement's language was unclear whether it prohibited a party from faxing its notice of termination in addition to sending it via certified or registered mail. *Id.* at 717–18.

Section Nine of the Factoring Agreement ("Section Nine") provides that "[t]his agreement ... shall continue in full force and effect until terminated by either of us giving to the other at least sixty (60) days prior written notice by registered or certified mail." *Id.* at 716–17. On August 2, 1989, BTC sent its notice of termination to plaintiffs both by certified mail and by fax. *Id.* at 717. Plaintiffs concede that sending the notice of termination by certified mail did not violate Section Nine, but argue that the fax did violate that section. *Id.* In interpreting Section Nine on summary judgment pursuant to the Second Circuit's standards, this Court found that because Section Nine was not unambiguous with respect to the means of transmitting a notice of termination, summary judgment was inappropriate. *Id.* at 717–18. As this Court explained in its 1996 Opinion:

> [I]t is clear that Section Nine of the Factoring Agreement required each party to send its sixty-day notice of termination by registered or certified mail. However, it is unclear whether this provision was intended by the parties to direct the exclusive means of transmitting a notice of termination, or if the parties were bound to use registered or certified mail, but free to use other means as well. This Court therefore finds that Section Nine is not "unambiguous" because it is plainly susceptible to more than one interpretation. Which of these conflicting interpretations is correct will determine whether BTC breached the

Factoring Agreement by faxing its notice of termination in addition to sending it by certified mail. Because this Court finds that the ambiguity of Section Nine creates a disputed issue of material fact, summary judgment on this claim should be denied. *Id.* It is this finding which BTC challenges in the instant motion to reargue.

BTC asserts that "reargument is warranted here since the Court overlooked undisputed facts and controlling law which establish the lack of any possible merit to any claim that [BTC's] courtesy fax could constitute a breach of the Factoring Agreement." (BTC Memo at 4.) In support of its position, BTC advances four arguments. First, BTC claims that "[c]ourts do not go out of their way to find claims not asserted by parties." *Id.* BTC asserts that "plaintiffs did not allege that [BTC's] faxing to [Bonnie & Co.'s] Hong Kong office of an additional copy of the August 2, 1989[,] notice constituted a breach of the Factoring Agreement. Rather, plaintiffs alleged that it was [BTC's] certified mailing of the notice to [Bonnie & Co.'s] New York office which was a breach—but plaintiffs then *conceded* that such certified mailing was in accordance with Section Nine...." *Id.* (emphasis in original). BTC contends that "in attempting to interpret the plaintiffs' Count Five, this Court in effect found an unpleaded 'breach of contract' claim based on the same allegations underlying plaintiffs'" other Count Five claims. *Id.* at 5.

Second, BTC maintains that "[i]t is undisputed that [BTC] complied with Section Nine of the Factoring Agreement when it gave its [sixty] day notice of termination by certified mail ... [and] that, notwithstanding such notice, [BTC] continued to advance almost $1,500,000.00 to [Bonnie & Co.] during August and September, 1989[,] and thus continued to finance [Bonnie & Co.]" *Id.* at 5–6. In addition, BTC points out that Bonnie & Co.: (1) remained in business during those months; (2) reinstated the Factoring Agreement in October 1989; (3) elected voluntarily to liquidate in December 1989; and (4) terminated the Factoring Agreement. *Id.* at 6. BTC argues that "[t]hese undisputed facts establish ... that th[is] Court overlooked a fundamental reason why [BTC's] August

1989 fax on an additional copy of the notice could not have been a breach of the Factoring Agreement." *Id.*

BTC claims that its "obligations under the Factoring Agreement were *not* to give (or refrain from giving) a notice of termination of that Agreement; rather, its obligations were to act as [Bonnie & Co.'s] factor to the extent, and in accordance with, the terms of the [Factoring] Agreement." *Id.* BTC thus argues that if it had only faxed the notice of termination and terminated the agreement, then "it would have been [BTC's] subsequent termination of the Factoring Agreement— *not* the giving of the faxed notice—which could have been the basis of a breach of contract claim." *Id.* (emphasis in original). BTC also maintains that "the only consequence of the giving of a notice of termination in a non-conforming manner would be that the giving of such notice would be ineffective—and not a breach of the Factoring Agreement." *Id.* at 6–7. Moreover, BTC contends that, because BTC continued to finance Bonnie & Co. and that it was Bonnie & Co. which later terminated the Factoring Agreement, BTC's "faxing of a copy *in addition* to the notice given in the manner specified in Section Nine cannot be the basis for a breach of contract claim since [BTC] did not terminate the Factoring Agreement." *Id.* at 7 (emphasis in original).

Third, BTC asserts that "nothing in Section Nine (or elsewhere in the Factoring Agreement) prohibited [BTC] from faxing an additional copy of the notice to [Bonnie & Co.]" *Id.* BTC also claims that, under controlling precedent, "covenants and other terms not stated in a completely integrated agreement ... are not to be implied." *Id.* Accordingly, BTC maintains that there is no "basis upon which any covenant could be implied which could have prohibited [BTC] from faxing an extra copy of its notice to [Bonnie & Co.'s] Hong Kong office." *Id.* Instead, BTC argues that "since it was the obvious intent of Section Nine that the party to whom a termination notice is sent should actually and timely receive that notice, any implied covenant against sending an *additional* copy by fax would be contrary to the

purpose of Section Nine." *Id.* at 8 (emphasis in original).

Fourth, BTC contends that "any claim based upon [BTC's] sending an additional copy of the notice by fax—indisputably sent to provide plaintiffs with the earliest possible notice of what [BTC] had properly sent by certified mail in New York—defies common sense." *Id.* Because of its knowledge that Boerer was in Hong Kong when BTC elected to send its notice of termination, "it was prudent and reasonable for [BTC] to fax an additional copy to [Bonnie & Co.'s] Hong Kong office." *Id.* Instead, BTC claims that, not only did it comply with Section Nine by sending the notice by certified mail, but it "*exceeded* its obligations by giving [Bonnie & Co.] an additional and even more timely copy of the notice." *Id.*

In opposition to BTC's motion for reargument, plaintiffs advance three principal arguments. First, plaintiffs' assert that this Court correctly found Section Nine ambiguous "as to whether it permits an additional termination notice to be sent via open telefax, for anybody to read." (Pltfs.' Opp. Memo at 1.) In support of this argument, plaintiffs counter BTC's claims for reargument on three separate grounds. First, plaintiffs' counter BTC's claim that Section Nine's intent is only to insure the timely receipt of termination notices and does not prohibit sending additional notices by fax. *Id.* at 2. Instead, plaintiffs' contend that "an equally obvious intent of Section [Nine] is to prevent [BTC] from sending sensitive financial information by other less confidential means than certified mail." *Id.* As a result, plaintiffs maintain that this Court was correct in denying BTC's motion for summary judgment on Claim One because Section Nine is capable of more than one meaning when viewed objectively by a reasonably intelligent person. *Id.*

Second, plaintiffs point out that, in the 1996 Opinion, this Court "correctly considered and rejected defendant's argument that [BTC] sent the telefax to Hong Kong to give the earliest possible notice of termination." *Id.* Plaintiffs maintain that BTC's argument ignores "the fact that the Hong Kong office is not part of [Bonnie & Co.] at all ... [but that] Bonnie Boerer & Company, Ltd., Hong

Kong ("Bonnie–HK") is a separately incorporated, independent Hong Kong entity completely distinct from [Bonnie & Co.]" *Id.* (emphasis omitted). As a result, plaintiffs contend that "Bonnie–HK was not a party to the Factoring Agreement between [Bonnie & Co.] and [BTC] and had no right whatsoever to receive a copy of the termination notice." *Id.* As a result, plaintiffs argue that BTC breached Section Nine by faxing the termination notice to Bonnie–HK.

Third, plaintiffs claim that BTC misconstrues the case law "for the proposition that disclosure of confidential information cannot be a breach of [an] implied contractual covenant." *Id.* at 3. Plaintiffs contend that the cases cited by BTC "are completely inapposite for the simple reason that they dealt only with the issue of whether an *implied* covenant exists requiring a bank to keep a customer's information confidential. Here, however, plaintiff has alleged a breach of a *express* provision of the Factoring Agreement that prohibits [BTC] from sending any additional termination notices by fax." *Id.* (emphasis in original).

The second principal argument which plaintiffs make is that BTC's reliance on the reinstatement of the Factoring Agreement after BTC noticed termination and Bonnie & Co.'s subsequent termination is irrelevant. *Id.* Instead, plaintiffs contend that "there is an obvious factual issue whether [BTC's] *initial* faxing of the termination notice scared off the Hong Kong manufacturers, causing them to delay production of [Bonnie & Co.'s] Holiday 1989 merchandise and to decide not to produce Spring and Fall 1990 merchandise, thereby irrevocably injuring [Bonnie & Co.]" *Id.* at 3–4 (emphasis in original).

In their third principal argument in opposition to BTC's motion to reargue, plaintiffs maintain that BTC incorrectly asserts that plaintiffs "never pleaded breach of Section [Nine] in their Complaint and therefore should not be able to assert that claim now." *Id.* at 4. Plaintiffs contend that their Complaint pleaded, "in no uncertain terms, that [BTC], 'in complete disregard with its factoring agreement' sent the termination notice by open telefax to the Hong Kong Office." *Id.* (quoting (Complaint ¶ 54)). Plaintiffs ar-

gue that "t[his] allegation is sufficient to satisfy Rule 8 of the Federal Rules of Civil Procedure," which requires a "short and plain statement of the claim showing the pleader is entitled to relief." *Id.* (quoting Fed.R.Civ.P. 8(a)(2)).

In response to plaintiffs' opposition, BTC first claims that plaintiffs argue for the first time, without record references, "that the Hong Kong office where the additional faxed copy of BTC's Notice of Termination was received was that of an entity allegedly separate and distinct from [Bonnie & Co.]" (Defendant's Reply Memorandum of Law In Support of Its Motion For Reargument, *Bonnie & Co. Fashions, Inc. v. Bankers Trust Co.*, 91 Civ. 0341, at 3 (Dec. 17, 1996).) BTC asserts that, because "plaintiffs previously claimed to the contrary and they made no meaningful distinction between Hong Kong and New York offices or entities," they may not do so now. *Id.* BTC also contends that because this Court found that BTC did not violate any confidentiality or fiduciary duty by faxing the notice of termination, whether Bonnie & Co. and Bonnie–HK are separate entities is irrelevant. *Id.*

Second, BTC argues that "in an effort to avoid BTC's showing that there is no implied negative covenant in the Factoring Agreement which prohibited BTC from sending an additional faxed copy of its certified mailed [n]otice of [t]ermination, plaintiffs now claim that BTC allegedly breached 'an express provision of the Factoring Agreement that prohibits [BTC] from sending an additional termination notices by telefax ...'" *Id.* at 3 (citation omitted). BTC maintains, however, that the Factoring Agreement contains no such prohibition. *Id.*

Finally, BTC asserts that plaintiffs' "conclusory allegation" that the Complaint does, in fact, plead a violation of Section Nine because it states that BTC acted "in complete disregard with its factoring agreement," is insufficient to state a claim. *Id.* Moreover, BTC argues that "[n]ot only is plaintiffs' conclusory allegation inadequate on a summary judgment motion, but plaintiffs ignore their own [Complaint] paragraph 54 which claims that BTC's 'breach' was that it 'unilaterally notified' plaintiffs of the termi-

nation," which this Court found BTC had the right to do. *Id.*

To reiterate, a Local Rule 3(j) motion will succeed only if it establishes that the court overlooked controlling facts or precedent which were before it on the original motion. *Fulani,* 149 F.R.D. at 503. Moreover, courts must be careful not to permit a party to utilize a motion to reargue as a substitute for an appeal from a final judgment. *See Morser,* 715 F.Supp. at 517. Accordingly, a motion for reargument "may not advance new facts, issues, or arguments not previously presented to the court." *Litton Indus.,* 1989 WL 162315, at *3.

■ This Court finds that none of BTC's arguments in support of its motion for reargument meet this standard. BTC's first argument is that this Court improperly interpreted Count Five of the Complaint to find an unpleaded breach of contract claim based on BTC's faxing its notice of termination. (BTC Memo at 4–5.) This argument, however, obviously was not raised in BTC's underlying motion for summary judgment, as it was inspired by the 1996 Opinion which construed plaintiffs' Complaint for the first time. As a result, it is inappropriate for resolution in the instant motion for reargument. *See Houbigant,* 914 F.Supp. at 1001. If BTC disagrees with this Court's construction of plaintiffs' pleadings, it is welcome to raise that issue to the Second Circuit once a final judgment is entered in this case.

BTC's second and third arguments in support of its motion for reargument both fail for the same reason as its first. In its second argument, BTC asserts that faxing the notice of termination in addition to certified mailing it could not have breached the Factoring Agreement. (BTC Memo at 5–6.) Instead, BTC claims that assuming *arguendo* that BTC had only faxed the notice without also mailing it, a breach could have occurred only upon the actual termination of the Factoring Agreement, and that the faxing of the notice would merely constitute ineffective notice. *Id.* at 6. This Court questions the logic behind this argument. Nevertheless, this Court need not accept BTC's reasoning in order to find that this argument was not raised in support of BTC's motion for sum-

mary judgment. As a result, this Court finds that this argument is improperly raised in the instant motion for reargument.

In its third argument in support of its Local Rule 3(j) motion, BTC contends that nothing in the Factoring Agreement prohibited BTC from faxing its notice of termination, and that relevant case law provides no basis to imply a covenant which could have prohibited BTC from faxing an additional copy of the notice of termination to Hong Kong. (BTC Memo at 7–8.) Like its first two arguments, BTC did not raise this argument before this Court in the underlying summary judgment motion. This Court therefore finds that this argument is improperly raised in a motion for reargument, and therefore should be denied.

In its fourth and final argument, BTC advocates a position in support of its motion for reargument which actually was before this Court on BTC's motion for summary judgment. BTC contends that it faxed to Hong Kong the notice of termination in order to insure Boerer's timely receipt of the notice. *Id.* at 8. Because BTC also sent the notice via certified mail, BTC claims that the fax merely exceeded, rather than violated, Section Nine. *Id.* BTC raised this argument to this Court in support of its motion for summary judgment. *Bonnie & Co.*, 945 F.Supp. at 716–17; (BTC SJ Memo at 28–29.) In its 1996 Opinion, however, this Court considered and rejected this argument because this Court found that Section Nine is ambiguous, and thus a proper subject for consideration at trial. *Bonnie & Co.*, 945 F.Supp. at 717–18. As previously stated, "[a] Local Rule 3(j) motion is not a motion to reargue issues already considered when a party does not like the way the original motion was resolved." *Houbigant*, 914 F.Supp. at 1001. Because this Court considered and rejected this argument in BTC's summary judgment motion, this Court finds that the instant argument is not properly raised in a Local Rule 3(j) motion. Accordingly, this Court finds that BTC is not entitled to reargue this issue.

## CONCLUSION

IT IS HEREBY ORDERED THAT plaintiffs' motion for reargument is denied.

IT IS FURTHER ORDERED THAT defendant's motion for reargument is denied.

SO ORDERED.