In re HOUBIGANT, INC., et al., Debtors.

HOUBIGANT, INC. and Parfums Parquet, Inc., Plaintiffs,

v.

ACB MERCANTILE, INC., ACB Fragrances and Cosmetics, Inc., Giacomo Giuliano, Augustine Celaya and Gilles Pellerin, V & B Distributors, Canada, Inc., Harold Schiff, A. Rosenblum Sales, Inc., and Rosenblum, Defendants.

ACB MERCANTILE, INC. and ACB Fragrances and Cosmetics, Inc., Counterclaim–Plaintiffs,

v.

HOUBIGANT, INC., Parfums Parquet, Houbigant, (1995) Ltd. (f.k.a. 3088766) Canada, Ltd., Michael Sherman, Luigi Massironi, Robert Graber, Thomas Bonoma, Renaissance Cosmetics, Inc., Kidd Kamm & Company, CTC International Group, Ltd., Brad Robinson and Chemical Bank New Jersey, N.A. (as agent for itself and National Westminster Bank U.S.A.), Counterclaim Defendants.

No. 95 Civ. 2467 (RWS).

United States District Court, S.D. New York.

Jan. 17, 1996.

Parker Chapin Flattau & Klimpl, LLP (Barry J. Brett, Stephen G. Rinehart, Gilbert C. Hoover, IV, of counsel), New York City, for Plaintiff/Counterclaim Defendants Parfums Parquet, Houbigant Ltee, Thomas Bonoma, Renaissance Cosmetics, Kidd Kamm, CTC Intl. and Brad Robinson.

Marcus Montgomery P.C. (Sam P. Israel, of counsel), New York City, for Defendant ACB Mercantile Inc.

Kaye, Scholer, Fierman Hays & Handler (Karen E. Katzman, Thomas A. Smart, Scott M. Berman, Elizabeth Forman, Yoon Hi Greene, of counsel), New York City, for Plaintiff/Counterclaim Defendants Michael Sherman, Luigi Massironi and Robert Graber.

SWEET, District Judge.

Plaintiff Parfums Parquet, Incorporated ("PPI") has moved pursuant to Local Rule 3(j) for reargument of this Court's October 17, 1995 Opinion and to dismiss three counts against Counterclaim Defendant PPI–Canada in deference to an ongoing Canadian action. Specifically, it moves to reargue the motion to dismiss Counts X (tortious interference with contracts against the PPI Entities and Bonoma) and XVII (trademark cancellation under the Lanham Act against PPI) and to dismiss counts IV, X and XVI as against PPI–Canada in deference to the pending Canadian action. In addition, PPI asks for several clerical adjustments to the Opinion of October 17, 1995. For the reasons discussed below the motions are granted in part and denied in part.

*Parties*

The parties and prior proceedings are described fully in prior Opinions of this Court, familiarity with which is assumed. *See Houbigant, Inc. v. ACB Mercantile, Inc.*, 185 B.R. 680 (S.D.N.Y.1995); *Houbigant, Inc. v. ACB Mercantile, Inc.*, 914 F.Supp. 964 (S.D.N.Y.1995) (the "October Opinion").

Houbigant is a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, New York.

PPI is a corporation organized and existing under the laws of Delaware, with its principal place of business in New York, New

York. On June 2, 1994 the Bankruptcy Court authorized Houbigant to implement and effectuate a license agreement with PPI [1]. In exchange for royalty payments, Houbigant granted to PPI the exclusive right and license in "the Territory [2]" to: a) manufacture in the Territory the Products covered by the Trademarks (the "Licensed Products"); b) distribute, use and sell throughout the Territory the Licensed Products; and c) use the Trademarks in conjunction with the Licensed Products and all advertising and letterheads and collateral promotional material in the Territory. PPI was Houbigant's exclusive United States licensee.

Defendant ACB Mercantile, Inc. ("ACB Mercantile") is a Canadian corporation with its principal place of business in Quebec, Canada.

Defendant ACB Fragrances and Cosmetics, Inc. ("ACB Fragrances") is a Canadian corporation with its principal place of business in Quebec, Canada. ACB Mercantile and ACB Fragrances are collectively referred to as "ACB companies." ACB companies are Houbigant creditors in the Bankruptcy proceedings. ACB Fragrances and Houbigant entered into a series of agreements in April 1993 by which Houbigant granted ACB Fragrances an exclusive license to manufacture, sell, and distribute certain Houbigant products in Canada. An asset purchase agreement dated December 12, 1994 (the "Asset Purchase Agreement") conveyed ACB Fragrance's business to Counterclaim Defendant PPI–Canada, a Canadian affiliate of plaintiff PPI.

Defendant Augustine Celaya ("Celaya"), an officer and principal shareholder of ACB Mercantile, is an individual residing in Texas.

Defendant Giacomo Giuliano ("Guiliano"), an officer and principal shareholder of ACB Mercantile, is an individual residing in Quebec.

Defendant Gilles Pellerin ("Pellerin"), an officer and principal shareholder of ACB Mercantile, is an individual residing in Que-

1. PPI was then called New Fragrance License Corp.

2. The License Agreement defined the Territory as "all countries, possessions, territories and U.S.

military outlets and PX's located in North America, Central America, South America, excluding Canada but including Hawaii."

bec. The ACB Companies and Celaya, Guiliano, and Pellerin are collectively referred to as the "ACB Defendants."

Counterclaim Defendant PPI–Canada is a Canadian corporation and a wholly-owned subsidiary of plaintiff, PPI. According to the Counterclaims, PPI–Canada has offices in Cambridge, Massachusetts and transacts business both directly and through its parent-corporations, PPI and Renaissance, within the Southern District of New York.

Counterclaim Defendant Renaissance Cosmetics Inc. ("Renaissance"), is a corporation engaged in various aspects of the fragrance business and owns all of the common stock of plaintiff, PPI. Renaissance conducts substantial business in New York.

Counterclaim Defendant Kidd Kamm & Co. ("Kidd Kamm") is a Connecticut company, and an affiliate of Renaissance, PPI and PPI–Canada. Kidd Kamm creates and invests in entities that manufacture and distribute fragrances in the United States and abroad and it conducts substantial business with this District. Kidd Kamm, PPI, PPI–Canada and Renaissance are referred to collectively as the PPI Entities.

Counterclaim Defendant Thomas Bonoma ("Bonoma") is Chairman and Chief Executive Officer of Renaissance and Chairman of PPI.

### Prior Proceedings

Houbigant and PPI filed an adversary proceeding in Bankruptcy Court in the Southern District of New York on April 4, 1995 pursuant to section 105(a) of Title XI of the United States Code, alleging violations of the Lanham Act, various statutes of the State of New York and the common law, seeking damages and to enjoin the ACB defendants from infringing upon rights in certain Houbigant trademarks, unfair competition and injuring their business reputations or diluting the distinctive quality of the trademarks. This adversary proceeding was withdrawn on consent from the Bankruptcy Court on May 17, 1995.

On May 5, PPI's affiliate, PPI–Canada, commenced an action against ACB in Canada alleging that ACB sold products infringing Houbigant's trademarks.

On June 16, 1995 ACB filed an answer and counterclaims against Houbigant, PPI, and third-party defendants Luigi Massironi, Robert Graber, Thomas Bonoma, Renaissance, PPI Canada (a wholly owned subsidiary of plaintiff PPI), Kidd Kamm & Company, CTC International Group, Brad Robinson, Chemical, and Michael Sherman. These third-party defendants are not parties in the bankruptcy proceeding. The seventeen Counterclaims allege fraud against Houbigant, Massironi, Sherman and Graber (Count I), violations of the Canadian Trademark Act against Houbigant (Count II), breaches of fiduciary duties against Houbigant, Massironi, Sherman and Graber (Count III), breaches of covenants of good faith and fair dealing against Houbigant, Chemical and the PPI Entities (Count IV), civil conspiracy to defraud against all counterclaim defendants except Chemical, Robinson and CTC (Count V), unfair competition under the Lanham Act against Houbigant, Massironi, Sherman and Graber (Count VI); injury to business under New York Business Law against Houbigant, Massironi, Sherman and Graber (Count VII), violation of New York Business Law regarding false advertising against all counterclaim defendants except Chemical, Robinson and CTC (Count VIII); common law unfair competition against Houbigant, Massironi, Sherman and Graber (Count IX); tortious interference with contracts against Houbigant, the PPI Entities, Bonoma, Sherman and Massironi (Count X); defamation *per se* against Houbigant, PPI, PPI–Canada, Bonoma, CTC, Robinson and Sherman (Count XI); defamation under the Canadian Trademarks Act against Houbigant, the PPI Entities, Bonoma, CTC, Robinson and Sherman (Count XII); contractual indemnification against Houbigant (XIII); indemnification implied in law against Houbigant (Count XIV), post petition breaches of contract against Houbigant and PPI–Canada (Counts XV and XVI, respectively); and trademark cancellation under the Lanham Act against Houbigant and PPI (Count XVII).

In the original motion to dismiss, PPI[3] moved to dismiss Counts IV, V, VIII, X—XII, XVI and XVII. The October Opinion granted the motion to dismiss Counts IV (against all but PPI–Canada), V, VIII, XI, and XII. This left claims of breaches of covenants of good faith and fair dealing against PPI–Canada (Count IV); tortious interference with contracts against the PPI Entities and Bonoma (Count X); post petition breaches of contract against PPI–Canada (XVI); and trademark cancellation under the Lanham Act against PPI (Count XVII) in addition to those claims which PPI had not moved to dismiss. PPI now moves to reargue the failure to dismiss Counts X and XVII and moves to dismiss Counts IV, X and XVI as against PPI–Canada in deference to the pending Canadian action.

The October Opinion also denied ACB's motion to dismiss for *forum non-conveniens.*

On November 3, 1995 the Honorable James L. Garrity, of the Bankruptcy Court issued an Opinion which resolved the issues remanded from this Court. *See In re Houbigant,* 188 B.R. 347 (Bankr.S.D.N.Y.1995). While that Opinion does not affect the present motions directly, it is noted here in order to create a full record of these complicated proceedings.

On November 7, 1995 PPI filed these motions for reargument, to dismiss and for clerical revisions. Oral argument was heard on November 15, 1995 and the motions were considered fully submitted at that time.

### Discussion

### I. *Motions to Reargue*

#### A. *Standard for Considering Motions to Reargue*

■ Local Rule 3(j) provides in pertinent part: There shall be served with the notice of motion a memorandum setting forth concisely the matters or controlling decisions which counsel believes the court has overlooked. No oral argument shall be heard unless the court grants the motion and specially directs that the matter shall be rear-

gued orally. No affidavits shall be filed by any party unless directed by the court. Thus, to be entitled to reargument under Local Rule 3(j), the moving party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before the Court on the underlying motion. *See Ameritrust Co. Nat'l Ass'n v. Dew,* 151 F.R.D. 237 (S.D.N.Y.1993); *Fulani v. Brady,* 149 F.R.D. 501, 503 (S.D.N.Y.1993), *aff'd* 35 F.3d 49 (2d Cir.1994); *East Coast Novelty Co. v. City of New York,* 141 F.R.D. 245, 245 (S.D.N.Y.1992); *B.N.E. Swedbank, S.A. v. Banker,* 791 F.Supp. 1002, 1008 (S.D.N.Y.1992); *Novak v. National Broadcasting Co.,* 760 F.Supp. 47, 48 (S.D.N.Y. 1991); *Ashley Meadows Farm Inc. v. American Horse Shows Ass'n,* 624 F.Supp. 856, 857 (S.D.N.Y.1985). Local Rule 3(j) is to be narrowly construed and strictly applied so as to avoid repetitive arguments on issues that have been considered fully by the court. *See Caleb & Co. v. E.I. DuPont De Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985). A Rule 3(j) motion is not a motion to reargue those issues already considered when a party does not like the way the original motion was resolved. *See Morser v. AT & T Information Systems,* 715 F.Supp. 516, 517 (S.D.N.Y. 1989); *Korwek v. Hunt,* 649 F.Supp. 1547, 1548 (S.D.N.Y.1986), *aff'd* 827 F.2d 874 (2d Cir.1987). As such, a party in its motion for reargument "may not advance new facts, issues or arguments not previously presented to the court." *Litton Indus., Inc. v. Lehman Bros. Kuhn Loeb, Inc.,* 1989 WL 162315, at *3 (S.D.N.Y. Aug. 4, 1989).

#### B. *Motion to Reargue Count X is Denied*

■ In response the PPI's motion to dismiss Count X, the Court reasoned and concluded as follows:

> ... to state a cause of action for tortious interference with business relations a plaintiff is required to show "the defendant's interference with business relations existing between the plaintiff and a third party, either with the sole purpose of

---

**3.** The PPI motion to dismiss was submitted on behalf of PPI, PPI–Canada, Bonoma, Renais-        sance, Kidd Kamm, CTC and Robinson.

harming the plaintiff or by means that are 'dishonest, unfair or in any other way improper.'" If the defendant's interference is intended, at least in part, to advance its own competing interests, the claim will fail unless the means employed include criminal or fraudulent conduct. (Emphasis in original) (Citations omitted). *PPX Enters., Inc. v. Audio Fidelity [Audiofidelity] Enterps., Inc.,* 818 F.2d 266, 269 (2d Cir. 1987); *see also Volvo N. Am. v. Men's Int'l Professional Tennis Council,* 857 F.2d 55, 74 (2d Cir.1988); *Robert J. McRell Assocs. v. Insurance Co. of N. Am.,* 677 F.Supp. 721, 729 (S.D.N.Y.1987); *Strapex Corp. v. Metaverpa, N.V.,* 607 F.Supp. 1047, 1050 (S.D.N.Y.1985).

The counterclaim complaint alleges that the PPI Entities hired an investigation firm, CTC, to help develop claims against ACB and that in the course of the investigation CTC employee Robinson with the approval of PPI Entities and Bonoma contacted business relations of ACB and told them that ACB "sold counterfeit goods" and that ACB was "running a clandestine operation." There are several other specific incidents recited in the counterclaim complaint of CTC, at the behest of PPI Entities and Bonoma, telling ACB clients falsely that the ACB product was defective. These allegations are sufficient to defeat a motion to dismiss this claim.

PPI has raised no issues of fact or law that the Court overlooked in its October Opinion. It is a question of fact as to whether or not the acts of PPI and Bonoma were sufficiently fraudulent to meet the test, but on a motion to dismiss the claim need not fail. The argument regarding the timing of the alleged acts was considered in the October Opinion and again here, and is rejected. The motion to reargue the Court's failure to dismiss this claim is denied.

### C. *Motion to Reargue Dismissal of Count XVII as Against PPI is Granted, and the Claim is Dismissed*

■ PPI points out correctly that the Court overlooked the standing argument raised by PPI in its earlier submissions regarding ACB's standing to move for the cancellation of Houbigant's U.S. License. The case law establishes "that when a plaintiff has no right to use a name shown in a registered trademark of a defendant, that plaintiff has no standing to seek cancellation of the trademark." *Ging v. Showtime Entertainment, Inc.,* 570 F.Supp. 1080, 1084 (D.Nev.1983) (*citing Avedis Zildjian Co. v. Fred Gretsch Mfg. Co.,* 251 F.2d 530 (2d Cir.1958)). The petitioner must show "a real and rational basis for his belief that he would be damaged by the registration sought to be cancelled, stemming from an actual commercial or pecuniary interest in his own mark." *Star–Kist Foods, Inc. v. P.J. Rhodes & Co.,* 735 F.2d 346, 349 (9th Cir.1984); *see Berliner v. Recordcraft Sales Corp.,* 1987 WL 5805 (S.D.N.Y. Jan. 15, 1987), *aff'd,* 857 F.2d 1461 (2d Cir.1987).

■ *Orient Exp. Trading Co. v. Federated Dept. Stores,* 842 F.2d 650 (2nd Cir.1988) provides an example, however, of a party suing successfully for trademark cancellation in the absence of its own mark. In that case, however, the defendant had an active business which used a product with a similar name as that of the subject trademark. The connection to Houbigant's trademark in this case is more tenuous and does not establish the requisite interest for standing. This does not mean that abandonment of mark is not an available defense to the Lanham Act claim. ACB simply does not have standing absent a present, rather than a theoretical, injury.

The motion to reargue dismissal of this Count for lack of standing is granted and the count is dismissed against PPI.

### II. *Motion to Dismiss Counts IV, X and XVI in Favor of the Canadian Action is Denied at this Time, with Leave to Renew*

In the October Opinion the Court declined to resolve PPI's Motion to Dismiss Count XVI in deference to the Canadian action which had been filed on May 5, 1995. In doing so, the October Opinion stated:

The complaint adequately alleges a breach of contract, but PPI asserts that the One

Million dollars [that ACB alleges it is due] is in escrow and that disposition of the account is to be resolved in the Canadian Proceeding. This point has not been adequately briefed by either side and the motion to dismiss will be denied at this time absent a fuller briefing on the scope of the Canadian action. Consistent with the discussion above [denying a motion to dismiss the case for forum non conveniens] the entire action will not be transferred to Canada.

October Opinion at 996.

The contract at issue here is the Asset–Purchase Agreement between PPI–Canada and ACB. PPI claims that the three counterclaims against PPI–Canada should be dismissed in deference to the Canadian action against ACB that was filed by PPI–Canada in May, 1995. In relevant part, the three counts at issue here allege the following:

Count IV alleges breaches of covenants of good faith and fair dealing on the part of PPI Canada for filing the Canadian Action in May and for colluding to delay Houbigant's consent to the assignment. Count X alleges tortious interference with business relations and does not directly implicate the formation or execution of the Agreement. Count XVI alleges breach of contract for the March 1995 repudiation of the agreement, which was followed by the filing of the law suit in May.

In addition to these counterclaims involving the Asset–Purchase Agreement, there is also a claim pending against ACB which was brought by PPI as a third-party beneficiary to the Asset–Purchase Agreement.

In addition to signing the Asset Purchase Agreement, ACB and PPI–Canada signed an Escrow Agreement. Both agreements provide that they are to be governed by the law of Quebec. In addition, the Escrow Agreement provides for exclusive jurisdiction of all disputes arising out of the Escrow Agreement in the courts of the judicial district of the Province of Quebec.

The parties to the Canadian action filed in May 1995 are PPI–Canada, the ACB Defendants and Houbigant Limitee, described in the Complaint in the Canadian action as "a corporation incorporated under the laws of Canada having its principal place of business in the City of Laval." The Canadian suit filed by PPI–Canada alleges that the Defendants breached representations and warranties included in the Asset Purchase Agreement, the Escrow Agreement and a Non–Competition Agreement between these parties and fraud. The complaint seeks, among other relief, to have Plaintiff "restitute to Defendants the assets acquired under the Purchase Agreement, . . . subject to the payment by Defendants to Plaintiff . . . $8,000,-000; and rescind and cancel the Purchase Agreement. . . ."

██ Courts have the inherent power to stay or dismiss an action based on the pendency of a related proceeding in a foreign jurisdiction. *Advantage International Management, Inc. v. Martinez,* 1994 WL 482114 (S.D.N.Y. September 7, 1994); *Continental Time Corp. v. Swiss Credit Bank,* 543 F.Supp. 408, 410 (S.D.N.Y.1982). Factors used by courts to determine whether to stay or dismiss a domestic lawsuit in deference of a parallel foreign proceeding include "the similarity of parties and issues involved, promotion of judicial efficiency, adequacy of relief available in the alternative forum, considerations of fairness to all parties and possible prejudice to any of them and the temporal filing for each action." *Caspian Investments, Ltd. v. Vicom Holdings, Ltd.,* 770 F.Supp. 880, 884 (S.D.N.Y.1991).

██ This case is not easily compared, however, to any of the cases cited by PPI. First, all of the other cases involved requests to dismiss cases in favor of ongoing cases in foreign forums. In this case there is a bankruptcy proceeding and an adversary proceeding with almost twenty claims and counterclaims, three of which PPI is asking to have dismissed. It is not a question of dismissing a case, but of dismissing particular claims within a larger dispute. While it is true that these three claims would remove PPI–Canada from the case, it is not the case that this would remove all the Purchase–Agreement claims from this action. In fact, the claim brought by PPI against ACB on the basis of a third party beneficiary claim to the Agreement would remain in this forum.

**1004**

Furthermore, the parties in the Canadian action are a sub-set of the parties in this case. If this Court were to dismiss the three counterclaims, it would dismiss PPI–Canada from this action, but leave PPI in the action litigating its third-party beneficiary claim on the same Agreement.

Considering the timing of the actions, this case was actually filed before the Canadian action. While it is true that the first action in which PPI–Canada was a party was filed in Canada, the case is not clear for temporal primacy. Unlike the *Advantage International* case relied upon by PPI, the foreign action here was filed less than two months before the counterclaims in this action. In *Advantage International* the foreign action was filed three years earlier and was past preliminary stages. This action is at its earliest stages.

While the forum selection clause within the Escrow Agreement makes it clear that the parties agreed to settle disputes related to that agreement in Quebec, the dispute, particularly Count X, reaches beyond the escrow agreement.

Since dismissing these claims would not remove the Asset Purchase Agreement from this case, since the moving party chose this forum and raised the Agreement in the first instance, and since it is not clear that the claims are completely redundant of those in the Canadian action, the motion to dismiss the claims will be denied at this time, with leave to renew.

### III. *Clerical Changes to the October Opinion*

Houbigant by letter of October 17, 1995 asked that the Court amend page 45 of the August Opinion the sentence that reads "Houbigant asserts that counterclaims 1, 2, 3, 4, 6–9, 13, 14 and portions of claims 5, 10 and 15 will be dismissed as untimely by the Bankruptcy court" to include ", 17" after the 14. The Opinion shall be so amended.

Consistent with the text of the October Opinion and with the request of PPI, the heading on page 70 of the Opinion which reads *"Count IV will Not Be Dismissed Against the PPI Defendants"* will be changed to read *"Count IV Will Be Dismissed as Against all the PPI Defendants Except PPI–Canada."* In addition, consistent with the discussion in the text and with the request of PPI, the heading on page 73 which now reads *"Count XI Alleging Defamation Against the PPI Entities, Bonoma, CTC, and Robinson will Not be Dismissed"* will be modified by striking the word "Not."

[Editor's Note: Changes incorporated in the October 17, 1995 opinion.]

Finally, in order to avoid any possible confusion as to which claims remain as to which parties, the parties will settle this order and that of the October opinion on notice.

### *Conclusions*

Consistent with the discussion above, the motion to reargue the dismissal of Count XVI is granted and the Count is dismissed, the other motions to dismiss or reargue are denied and clarifications requested by PPI and Houbigant are granted.

This Opinion resolves the motions filed on November 7, 1995 (Document # 50). A final discovery and trial schedule will be set at the filing of the order.

Submit order on notice.

It is so ordered.