**JPMORGAN CHASE BANK, Plaintiff,**

v.

**Lodwrick M. COOK, Defendant.**

**No. 03 Civ. 2690GEL.**

United States District Court, S.D. New York.

April 21, 2004.

---

Andrew E. Tomback, Allan S. Brilliant, Milbank, Tweed, Hadley & McCloy LLP, New York, N.Y. for Plaintiff, JPMorgan Chase Bank.

Terry Christensen, Patricia Glaser, Sean Riley, Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP, Los Angeles, CA, Peter A. Mahler, Derfner & Mahler, New York, N.Y. for Defendant Lodwrick M. Cook.

## OPINION AND ORDER

LYNCH, District Judge.

This lawsuit concerns a $7.5 million personal loan that Lodwrick Cook, a senior executive at Global Crossing, Ltd. ("Global Crossing") borrowed from JPMorgan Chase's private banking division and failed to repay.[1] Cook moved to dismiss the complaint and JPM cross-moved for summary judgment on the doctrine of equitable subrogation. In a February 13, 2004, Opinion and Order, the Court denied Cook's motion to dismiss, and granted JPM's cross motion for summary judgment. *JPMorgan Chase Bank v. Cook,* 318 F.Supp.2d 159 (S.D.N.Y.2004). Since that date, Cook has moved for reconsideration of the February 13 Order, JPM has submitted a Proposed Order of Judgment, and Cook has objected to the Proposed Order of Judgment. For the reasons that follow, the motion for reconsideration will be denied, and the Proposed Order of Judgment will be entered.

## DISCUSSION

### I. Standard on a Motion for Reconsideration

Local Civil Rule 6.3 for the Southern District of New York provides that parties may file motions for reconsideration of the Court's decisions, accompanied by memoranda that set forth "the matters or controlling decisions which counsel believes the court has overlooked." Courts in this District review motions pursuant to Local Rule 6.3 under the same standards applicable to motions pursuant to Federal Rule of Civil Procedure 59(e), and thus "a motion for reconsideration is appropriate only where the movant demonstrates that the Court has overlooked controlling decisions or factual matters that were put before it on the underlying motion ... and which, had they been considered, might have reasonably altered the result before the Court." *McCullagh v. Merrill Lynch &*

---

1. A full discussion of the background of this case is contained in the Court's February 13, 2004 Opinion and Order. Capitalized terms used in this Opinion and Order shall have the same meaning as in the February 13 Order.

*Co.*, 01 Civ. 7322(DAB), 2004 WL 744484, at *1 (S.D.N.Y. Apr. 7, 2004) (citations and internal quotations omitted). Cook's motion puts forth three cases and an array of factual issues that he claims the Court overlooked. *See* Defendant's Mem. at 2–3. None of the authorities or factual matters raised by Cook in his motion satisfy the standards for reconsideration under Local Rule 6.3.

## II. *"Controlling Decisions"*

■ First, Cook argues that the Court overlooked controlling authorities on the question of whether JPM is entitled to pursue the remedy of equitable subrogation, namely *Eastern States Health & Welfare Fund v. Philip Morris, Inc.*, 11 F.Supp.2d 384, 397 (S.D.N.Y.1998), and *Reliance Ins. Co. v. Aerodyne Engineers, Inc.*, 204 A.D.2d 944, 612 N.Y.S.2d 87, 88 (3d Dep't 1994). It should be apparent to learned counsel such as those appearing in this matter that cases from another judge of this Court or from the Third Department of New York's Appellate Division do not constitute "controlling authority" for this Court, and, under the standard of review applicable to motions for reconsideration, that fact should end the matter. However, as Cook's chief complaint appears to be that this Court's February 13 Order "does not reference" these two cases, relied upon heavily by Cook in his submissions on the Motion to Dismiss and Motion for Summary Judgment, *see* Deft's Mem. at 5, a brief analysis seems appropriate to demonstrate that neither of these cases, even if they were controlling as to this Court, would alter the result in this case.

Cook relies on *Eastern States* and *Reliance* for the proposition that New York law requires "(1) that the subrogee must have actually made payment to the subrogor for the subrogor's loss and (2) that the payment must have been made pursuant to an 'obligation running from the subrogee to the subrogor.'" Deft's Mem. at 5. Contrary to Cook's assertions, *Eastern States* is neither "directly on point" nor "determinative of the claims" in this action. The opinion in that case is directed entirely to whether subject matter jurisdiction exists over the plaintiff's claims, in the context of deciding a motion to remand the action to state court, and the issue of who may assert a claim for equitable subrogation is not examined at all. True, "in the interests of completeness" in its survey of possible bases for federal jurisdiction, although neither party had raised the issue, *id.* at 397, the court gives glancing attention to the question of whether New York law on equitable subrogation might reference federal law issues. The *Eastern States* court quickly disposes of the first element listed by Cook as plainly giving rise to no federal question; even if the limited discussion on this point were not entirely dictum, it is far from clear that the court intends the meaning that Cook gives to that language. As to the second element cited by Cook, the *Eastern States* court employs the phrase "payment … pursuant to some obligation" simply to contrast those payments that can give rise to an equitable subrogation claim to payments made as a volunteer, and raises the requirement merely as a point of access to the plaintiff's claim that the payment in question had been made pursuant to obligations under its ERISA plan documents, which could possibly have raised an issue under federal law. *See id.* Nothing in the opinion bears on the question of whether JPM is entitled to assert a claim of equitable subrogation here, nor alters the reasoning or conclusion of the Court's February 13 Order.

The *Reliance* case is likewise neither directly on point nor determinative of the claims in this action. The brief three-

paragraph opinion reverses an order of the New York Supreme Court that had allowed a re-insurer to equitably subrogate to the rights of the insured, holding that the reinsurance contract was "distinct and separate" from the original insurance contract and thus no privity existed between the original insured and the reinsurer. 204 A.D.2d 944, 612 N.Y.S.2d 87, 87. This case is distinguishable from the present one on any number of legal and factual grounds—it addresses re-insurance rather than letters of credit, it pre-dates the amendment to New York's Uniform Commercial Code § 5-117, and it deals with two "distinct and separate" contracts as opposed to the clearly related and interlocking Credit Agreement and Letter of Credit at issue in this case. As with *Eastern States*, even if the holding in *Reliance* were controlling as to this Court, the decision in that case does not alter the reasoning or conclusion of the Court's February 13 Order.

■ Second, Cook argues that, in applying New York's Uniform Commercial Code § 5-117, the February 13 Order did not "address the unambiguous terms and definitions contained therein." Deft's Mem. at 6-7. This discussion amounts to nothing more than an assertion that the Court incorrectly applied section 5-117—argument that is plainly improper on a motion for reconsideration. *See, e.g., In re Houbigant, Inc.,* 914 F.Supp. 997, 1001 (S.D.N.Y.1996) (a litigant may not use a motion for reconsideration to reargue "those issues already considered when a party does not like the way the original motion was resolved."). The Court declines Cook's invitation to revisit its analysis of section 5-117.

Third, Cook asserts that the Court failed to "address or distinguish" the authorities cited in his original submissions that stand for the proposition that equitable subroga-tion is not available to a party that has contractual remedies available. Deft's Mem. at 8-10. Cook relies in particular on the majority opinion in *Tudor Development Group, Inc. v. U.S. Fidelity & Guaranty Co.,* 968 F.2d 357 (3d Cir.1992). As with *Eastern States* and *Reliance,* an opinion from the Court of Appeals for the Third Circuit is in no sense "controlling" as to this Court. Moreover, the re-arguing of the applicability of *Tudor Development* in the guise of bringing "overlooked" authority to the Court's attention borders on the contumacious, as the question was extensively briefed by both parties in the original submissions and it is plain from the face of section 5-117 that the New York legislature expressly adopted Chief Judge Becker's dissent in *Tudor Development.* Contrary to Cook's assertions that only certain portions of the dissent were incorporated into New York law, Judge Becker rejects the majority's arguments on contractual remedies as part and parcel of rejecting the majority's conclusions on the availability of equitable subrogation to issuers of letters of credit, noting the anomaly of the majority's position: that such a rule "denies equitable subrogation when the owing party is judgment-proof, yet that is precisely when subrogation is most likely to be necessary." *Id.* at 370. The policy justifications (among them the availability of contractual remedies) for the traditional common-law rule denying issuers of letters of credit access to equitable subrogation, ably critiqued by Judge Becker, are precisely what the New York legislature rejected in amending section 5-117. A reconsideration of Cook's tenacious belief that the rule of *Tudor Development* is the better policy does not alter the reasoning or conclusion of the Court's February 13 Order.

III. *"Factual Matters"*

Cook asserts that, in issuing the February 13 Order, the Court "overlooked a

multitude of disputed factual issues" that Cook believes would preclude summary judgment if they were considered. Deft's Mem. at 10–18. Cook also asserts that "new evidence" requires reconsideration. These factual issues include asserted disputes over JPM and the Participant Bank's knowledge and intent with regard to the Global Crossing Loan Guarantee Program, Cook's knowledge and expectations with regard to the Loan Guarantee Program, a possible extension of Cook's reimbursement obligation to Global Crossing, the availability to Cook of defenses to the underlying promissory note, the authority of JPM to act on behalf of the Participant Banks, and the contractual remedies available to JPM and the Participant Banks as well as the distribution to the Participant Banks from the Global Crossing bankruptcy estate that took place after briefing and argument on the underlying motions here. None of the factual matters raised by Cook alter the result in the Court's February 13 Order.

First, contrary to Cook's assertions, the Court did not rest its conclusion on speculation as to Cook's mental state when he secured the $7.5 million loan through the Loan Guarantee Program. Even accepting Cook's version of the facts surrounding both his and the Participant Bank's participation in the Loan Guarantee Program (*inter alia,* that all parties knew and expected Global Crossing to repay the obligations incurred through the Loan Guarantee Program), as the Court must on a motion for summary judgment, the balance of equities remains the same. Cook himself concedes that, at a minimum, he took on the obligation to reimburse Global Crossing for any corporate funds expended to guarantee his personal debt of $7.5 million.[2] In addition, no one disputes that Cook has not paid a single penny of the principal on the $7.5 million, whether to JPM, the Participant Banks, or Global Crossing for distribution to its many unpaid creditors and empty-handed shareholders. In the face of the undisputed facts surrounding this transaction, none of Cook's assertions about the need for discovery on the "knowledge or expectations" of the participants alter the reasoning or conclusion of the Court's February 13 Order as to the balance of equities between the parties.

Second, the alleged disputes over the authority of JPM to act on behalf of the Participant Banks, Cook's asserted "diminution of collateral" contractual defense to the promissory note, and Cook's assertion that Global Crossing extended the term of his obligation under the Reimbursement Agreement are all issues that were raised in the briefing and argument on the original motions and were either rejected or deemed irrelevant by the Court in issuing the February 13 Order. No genuinely new evidence, new authority, or overlooked facts are identified by Cook in his motion for reconsideration, and, while Cook may dispute the applicability of the term "default" to the status of his personal debt of $7.5 million, the relevant undisputed facts are that Cook received the $7.5 million from Private Bank, Cook has made no

---

**2.** Cook's continued references to his Reimbursement Agreement with Global Crossing as evidence of his honorable intentions to live up to his obligations are disingenuous, to say the least, as Cook has asserted both in the Bankruptcy Court and in his submissions to this Court that that Agreement only obligates him to repay the amounts *actually disbursed* by Global Crossing. Since Global Crossing's insolvency is such that even its senior creditors have received less than 25 cents on each dollar of their claims, this position amounts to an argument that Cook, a former co-chairman of the company, is entitled to receive a windfall of some $5 million or more on account of the company's total financial collapse under his leadership. Such a result would turn equity on its head.

payment whatsoever to any potential obligee on the principal of that loan, and neither the promissory note nor any law cited by Cook give rise to an *obligation* on the part of Private Bank to have mitigated its losses by liquidating Cook's collateral. The Court has already rejected all of the defenses to repayment raised in the original briefing and argument, including Cook's claims regarding the equity of Private Bank's actions with respect to his collateral, and nothing in Cook's current motion merits reconsideration of that decision.

Third, Cook informs the Court that, since briefing and argument on the underlying motion, JPM and the Participant Banks have received a distribution of some $500 million and a portion of the stock of New Global Crossing (the "Bank Distribution") on account of their $2.2 billion claim in the Global Crossing bankruptcy, which incorporates the $7.5 million attributable to the Letter of Credit issued for Cook's personal loan. Def't's Mem. at 19–20. Cook asserts that this "new evidence" requires reconsideration of the Court's February 13 Order. Even if the exact amount and timing of the Bank Distribution had been known at the time of the briefing and argument on the underlying motions, it would not have altered the result in the February 13 Order.

■ As an initial matter, JPM correctly notes in its opposition to the motion for reconsideration that bankruptcy law has traditionally allowed creditors to pursue a claim against co-liable debtors in full against each debtor, until the underlying claim has been fully satisfied. Plaintiff's Mem. at 15–16. However, the more pertinent fact here is that the Global Crossing bankruptcy plan *also* assigned to JPM and the Participant Banks all rights in the Reimbursement Agreement between Global Crossing and Cook, as part of the distribution on their $2.2 billion claim against Global Crossing. Cook claims that he is entitled to discovery on the allocation of the Bank Distribution, allegedly to ensure that JPM and the Participant Banks do not get a duplicative recovery on the $7.5 million debt. But as a practical matter such discovery would have no effect whatever on the conclusion in the February 13 Order that Cook must pay the principal of the $7.5 million debt to JPM, because the consummation of the Global Crossing bankruptcy plan establishes that JPM and the Participant Banks now hold the full universe of rights to repayment from Cook—whether derived from equitable subrogation or from Cook's conceded obligations to Global Crossing under the Reimbursement Agreement.

As an illustration of this fact, imagine that Cook's desired discovery revealed that $2 million of the Bank Distribution was allocated by the Participant Banks to the portion of their claim derived from the Letter of Credit. Under Cook's theory, the equitable subrogation judgment should then be reduced to $5.5 million to account for this payment from Global Crossing. But that outcome would merely give rise to a new claim against Cook by JPM and the Participant Banks, as successors to the Reimbursement Agreement, for "reimbursement" of the $2 million paid by Global Crossing. Even if Cook's desired discovery reveals that the Bank Distribution was allocated in such a way that Global Crossing paid the *entirety* of the $7.5 million debt, the sole practical result would be to reform JPM's equitable subrogation claim for $7.5 million into a contractual claim under the Reimbursement Agreement for $7.5 million. While Cook may wish to generate additional litigation over these issues to further postpone the date at which he will have to repay the $7.5 million that he borrowed, this Court can-

not in equity allow additional resources to be expended to pursue a purely theoretical discovery exercise by Cook, when the outcome cannot possibly alter the result in the February 13 Order: Cook is obligated to repay the $7.5 million personal loan extended to him through the Loan Guarantee Program, and, in light of all the relevant facts, that obligation runs to JPM.

## IV. *Proposed Order of Judgment*

Finally, in his Objection to the Proposed Order of Judgment filed by JPM, Cook argues that the Court should decline to award prejudgment interest to JPM. As Cook correctly notes, since an equitable subrogation claim is made in equity, a demand for prejudgment interest is addressed to the sound discretion of the Court. N.Y. C.P.L.R. § 5001(a). In this case, however, the Court finds it appropriate to exercise its discretion to grant interest to plaintiff. Cook's argument that he never expected to have to pay the Private Bank, but only Global Crossing, is irrelevant. First, Cook does not claim that he did not expect to have to pay the full amount of the loan eventually.[3] Second, the fundamental fact remains that Cook received $7.5 million from the Private Bank and agreed to repay it. That he expected a guarantor would repay in his stead does not give him any equitable claim when the guarantor proved insolvent and unable to pay. Nor is there merit to Cook's claim that he should not have to pay interest for the period between the default and JPM's institution of this lawsuit, a period of nine months. However long JPM delayed in bringing suit to collect its debt, Cook retained the use and benefit of the borrowed money during that period. It is equitable that he should have to pay interest for that use.

## CONCLUSION

For the foregoing reasons, defendant's motion to reconsider the February 13 Order is denied, and the Proposed Order of Judgment submitted by plaintiff will be entered.

SO ORDERED.

---

**3.** As noted above in footnote 2, if by asserting that he did not expect to have to do more than reimburse Global Crossing for "any actual payment" Cook means to suggest that he expected Global Crossing would become bankrupt and would repay the banks less than the full amount drawn under the letter of credit to repay his loan, neither "good faith" nor "equity" are appropriate terms to describe his behavior.